UNION DE LA CONSTRUCCION
DE CONCRETO Y EQUIPO
PESADO, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 92–2384.

United States Court of Appeals,
First Circuit.

Heard Sept. 9, 1993.

Decided Nov. 12, 1993.

Marcos A. Ramirez Lavandero, Hato Rey, PR, with whom Pedro J. Salicrup, Rio Piedras, PR, was on brief, for petitioner.

Martin M. Eskenazi, Atty., with whom Jerry M. Hunter, Gen. Counsel, Yvonne T. Dixon, Acting Deputy Gen. Counsel, Nicholas E. Karatinos, Acting Associate Gen. Counsel, Margery E. Lieber, Asst. Gen. Counsel for Sp. Litigation, and Eric G. Moskowitz, Deputy Asst. Gen. Counsel for Sp. Litigation, N.L.R.B., Washington, DC, were on brief, for respondent.

Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, and McAULIFFE,* District Judge.

BREYER, Chief Judge.

The Union de la Construccion de Concreto y Equipo Pesado (the "Construction Workers") asks us to review a National Labor Relations Board determination finding both 1) that Empresas Inabon, Inc. (the "Company") committed an "unfair labor practice" in refusing to bargain with the Construction Workers; and 2) that, currently, a different

* Of the District of New Hampshire, sitting by     designation.

union, the Congreso de Uniones Industriales de Puerto Rico (the "Industrial Workers"), not the Construction Workers, represents the Company's employees. We agree with the Board that this petition, in essence, asks us to review a Board "representation" decision; that we lack jurisdiction to review such a decision; and, that we must, therefore, dismiss this petition.

## I.

### Background

In the spring of 1991, the Construction Workers represented the Company's employees under a contract due to expire in June. In April, the Industrial Workers asked the National Labor Relations Board to hold an election so that the Company's employees could choose between the two unions. In May, the Company decided that, pending the outcome of the election, it would not bargain with the Construction Workers over a new contract.

The NLRB's Regional Director scheduled an election for mid-June. Before the election, the Construction Workers, objecting to the Company's refusal to bargain, filed an unfair labor practice complaint. National Labor Relations Act (NLRA) § 8(a)(1), (5), 29 U.S.C. § 158(a)(1), (5). The Industrial Workers won the June election by a vote of 30 to 6. The Construction Workers subsequently filed objections to the election. 29 C.F.R. § 102.69. They said that the Company's refusal to bargain with them in May had improperly biased the employees against them and that the election should be set aside.

The NLRB's Regional Director consolidated the unfair labor practice proceeding with the representation proceeding. Ultimately, an Administrative Law Judge found in the Construction Workers' favor on the unfair labor practice issue. *See RCA Del Caribe, Inc.*, 262 NLRB 963, 1982 WL 24672 (1982) (the filing of an election petition does not excuse an employer from continuing to bargain with the currently certified collective bargaining representative). But, he found in the Industrial Workers' favor on the second issue. That is to say, he decided that the refusal to bargain had *not* affected the outcome of the election; that the election, therefore, was valid; and that, consequently, the Industrial Workers, not the Construction Workers, represented the Company's employees. He issued a recommended order that, in essence, told the Company not to commit similar "unfair labor practices" in the future, that is, it told the Company that it should not again, under similar circumstances, refuse to bargain with "an incumbent union." The order also told the Company to post notices saying that it would not refuse to do so. But, the order did not tell the Company to bargain with the Construction Workers, for, after all, in the ALJ's view, the Construction Workers no longer represented the employees.

The Construction Workers appealed the ALJ's determinations to the Board. The Board affirmed the ALJ and issued the ALJ's order; it also certified the Industrial Workers as the collective bargaining representative of the Company's employees. The Construction Workers now petition this court for review of the Board's decision. The Board asks us to dismiss the petition, and we shall do so because, as the Board points out, we lack the legal power to review what is, in essence, a Board decision about which union represents the Company's employees. *See American Federation of Labor v. NLRB*, 308 U.S. 401, 405–11, 60 S.Ct. 300, 302–05, 84 L.Ed. 347 (1940).

## II.

### Analysis

The Board is clearly right in pointing out that we lack the legal power to review directly an NLRB determination about which union represents a group of employees. *American Federation of Labor*, 308 U.S. at 409, 60 S.Ct. at 304 (NLRA § 10 authorizes judicial review of NLRA § 8 "unfair labor practice" determinations, but it does not authorize judicial review of NLRA § 9 "representation" determinations); *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77, 84 S.Ct. 894, 896–97, 11 L.Ed.2d 849 (1964); *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 154, 61 S.Ct. 908, 913, 85 L.Ed.

1251 (1941); *S.D. Warren Co. v. NLRB*, 353 F.2d 494, 496 (1st Cir.1965), *cert. denied*, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 300 (1966). To obtain judicial review of a § 9 "representation" decision, an objecting firm, or a "losing" union, must take a roundabout, "back door" route. It must transform the "representation" determination into an "unfair labor practice" determination. It can do so by 1) engaging in an activity (typically, refusing to bargain or picketing) that amounts to an unfair labor practice if, but only if, the Board's § 9 decision is proper; 2) making certain that the Board then finds that it has engaged in an unfair labor practice; and, then, 3) petitioning a court to set aside the "unfair labor practice" determination on the ground that the underlying "representation" determination is improper. *Boire*, 376 U.S. at 476–77, 84 S.Ct. at 896–97; *American Federation of Labor*, 308 U.S. at 410 n. 3, 60 S.Ct. at 305 n. 3; *United Federation of College Teachers, Local 1460 v. Miller*, 479 F.2d 1074, 1078–79 (2d Cir.1973); *Lawrence Typographical Union v. McCulloch*, 349 F.2d 704, 708 (D.C.Cir.1965); *see also NLRB v. Union Nacional de Trabajadores*, 540 F.2d 1, 12–13 (1st Cir.1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 736, 50 L.Ed.2d 750 (1977). The Construction Workers have not tried to take this route directly here, though they believe they can construct a kind of analogy that will lead to review.

■ The Construction Workers find an analogy by asking us to review the Board's decision *not* to issue a certain kind of order to cure the "unfair labor practice," namely, an order requiring the Company to bargain with them in the future. They believe the Board would have issued such an order had it not thought the order pointless; and, it would not have thought the order pointless had it set aside the election results in the Industrial Workers favor. The Construction Workers hope, in this way, to obtain our review of the "representation proceeding" results through the back door, that is, by obtaining review of the "unfair labor practice" order that is necessarily founded upon a particular "representation" proceeding outcome. *See* NLRA § 9(d), 29 U.S.C. § 159(d) (permitting court review of representation proceeding results when "an order of the Board" in an unfair labor practice proceeding "is based in whole or in part" upon the results of an earlier representation proceeding); *Boire*, 376 U.S. at 477, 84 S.Ct. at 897; *American Federation of Labor*, 308 U.S. at 405–11, 60 S.Ct. at 302–05.

The problem for the Construction Workers, however, is that they did not tell the Board that they wanted it to review the scope of the ALJ's "unfair labor practice" order. Rather, when they asked the Board to review the ALJ's decision, they told it that they objected:

> to the ALJ's finding that directing an election, notwithstanding the pending of an 8(a)(5) unfair labor practice charge, does not affect the laboratory condition required by law before the holding of an election

and

> to the ALJ's finding that the Region's decision not to block the holding of the election did not affect its result since the employees were able to freely exercise their right to choose in the said election.

Petitioner's Appendix at 57–58.

The Board, reading these objections, could reasonably believe that the Construction Workers were satisfied with the "unfair labor practice" results, and that they wanted the Board to review only the "representation" results. They might have thought that the Construction Workers were conceding that, if the election was proper, a bargaining order would not be appropriate. *See Celebrity Inc.*, 284 NLRB 688, 1987 WL 89744 (1987); *Len Martin Corp.*, 282 NLRB 482, 1986 WL 54290 (1986). Irrespective of what the Construction Workers actually did want, they did not raise before the Board the objection to the "unfair labor practice" order that they seek to raise here. We therefore cannot consider it. NLRA § 10(e), 29 U.S.C. § 160(e); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66, 102 S.Ct. 2071, 2082–83, 72 L.Ed.2d 398 (1982); *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 311 & n. 10, 99 S.Ct. 1123, 1129 & n. 10, 59 L.Ed.2d 333 (1979); *El Gran Combo de Puerto Rico v. NLRB*, 853 F.2d 996, 1001 (1st Cir.1988).

We add that the Construction Workers do not point to any special circumstance that could excuse their failure to raise the point before the Board, nor do they raise any particularly strong claim on the merits, nor do we see any obvious error in the ALJ's decision of the representation of the matter.

For these reasons, the petition for review is

*Dismissed.*